### THE DOROTHY.

#### DEVERMANN et al. v. THE DOROTHY.

(District Court, S. D. New York. December 26, 1893.)

COLLISION—EAST RIVER—CROWDING—STATE STATUTE.

The steamboat H. was going up the East river, and was overtaking a ferryboat. On the H.'s port hand lay, practically stationary, a carfloat, which a tug had hauled out of a slip preparatory to taking it alongside. The H., in passing between the float and the ferryboat at a distance of some 50 feet from the ferryboat, and less from the float, collided with the latter. Held, that the H. was in fault in needlessly attempting to go between the other vessels, in violation of the state statute which prohibits steamboats from passing each other nearer than 20 yards.

In Admiralty. Libel by William Devermann against the steam tug Dorothy for collision. Libel dismissed.

Henry D. Hotchkiss and Mr. Middlebrook, for libelants.
Stewart & Macklin, for claimants.

BROWN, District Judge.    On the 9th of May, 1893, at about 5:15 P. M., as the side-wheel passenger steamer Havana was going up the East river in the beginning of the ebb tide, her port side, just forward of the paddle wheel, came in collision with the starboard corner of a railroad float, off pier 41, which the tug Dorothy was taking alongside for the purpose of towing up the Harlem river.    The Havana suffered some damages, for which the above libel was filed. The Dorothy had shortly before taken the railroad float, laden with cars, from the slip between piers 40 and 41.    The weight of testimony is that she pulled the float out by a short hawser beyond the end of the piers, and headed her up into slack water, abreast of pier 41, pointing nearly straight up river; that the Dorothy had cast off her hawser, and was moving down on the New York side of the float, at a distance variously estimated at from 75 to 300 feet off pier 41, but that she had not yet fully made fast to the float, and was not in condition to commence towing at the time of the collision. The Havana had left passengers at Peck slip, and had thence passed under the bridge, about 150 feet from the New York pier, and was overtaking the Alaska, a Roosevelt ferryboat, going up the river on the Havana's starboard side.

The pilot and master of the Havana testifies that as he passed Catharine ferry, he saw the Dorothy on the port side of the float; that she came straight out of the slip, turned down, and made a complete circle in the river so as to head up; that he at first intended to go on the New York side of her, but, seeing her turn in towards the New York shore, and also seeing two small sloops there, he concluded to go to starboard; that as he approached nearer to the float he saw that she had become still in the water; that he gave her two signals of one whistle, indicating that he would go to starboard, to which he got no answer; and that the collision was caused by the act of the tug in shoving the float's bow out into the river.    This account of the navigation of the Dorothy is in such conflict with the statement of the Dorothy's witnesses that I must regard it as mistaken, and the result of some confusion.    It is improbable in itself, and could not possibly have been accomplished in the short time occupied by the Havana in going at the rate of 10 or 12 knots an hour from the bridge up to pier 41, viz. in about two minutes.    The Dorothy's witnesses show that the float was in the edge of the eddy tide, very nearly still, at the time of the collision, and for a few minutes before.    They state that the Havana came very near to the starboard quarter of the stern of the float; and Mr. Devermann, of the Havana, gives the final estimate of a distance sufficient to drive a team of horses between them.    This agrees well with the estimate of the man on the umbrella of the float, though the master of the Havana calls the distance 30 or 40 feet.

I am satisfied that there was no shoving of the float's bows by the Dorothy out into the stream.    It is contradicted by her witnesses, and there are no circumstances to indicate that there was any need of such a maneuver before she made fully fast.    She was in the act of getting made fast in order to take the float up the Harlem river,

and the position of the float was the usual one, and a favorable one therefor. It is not at all improbable that while so heading, in the edge of the eddy, the boat was moving a little, and the bow possibly swung a little to starboard. Some motion in the water is to be expected, and is inevitable. The float was taken from the usual slip of the claimant's line, and the pilot of the Havana knew the usages of those boats in making up their tows at that place.

The real fault was the fault of the Havana in the undertaking to pass at such a speed, amid more or less shifting waters, in the narrow space between the Alaska and the float. A state statute prohibits a steamer from passing another steamer nearer than 20 yards. The Alaska was estimated by the master to be 40 or 50 feet on the starboard side, and the available space on the port side of the Havana was evidently very much less. There was abundant room for the Havana had she chosen to keep astern of the Alaska until she had passed the float, or had she chosen to go to starboard of the Alaska in mid river. The unnecessary attempt to go between the Alaska and the float, which was practically stationary, though probably not entirely so, was at the Havana's risk. The Senator D. C. Chase, 46 Fed. 874; The City of Chester, 24 Fed. 91. The tug and float were not under way. The Dorothy was not required to make any response to the Havana's signals, which were given to her only very shortly before collision; nor was there anything that the Dorothy could have done, in the short interval after the signals were given, that would have been of any use in avoiding collision.

The libel must therefore be dismissed, with costs.